UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALL SOULS UNITARIAN CHURCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-01648-TWP-TAB |
| | ) |
| CHURCH MUTUAL INSURANCE COMPANY, S.I., | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTIONS TO EXCLUDE OR LIMIT TESTIMONY**

This matter is before the Court on a Motion to Exclude Plaintiff's Expert Witnesses filed by Defendant Church Mutual Insurance Company, S.I. ("Church Mutual") (Filing No. 31) and Plaintiff's Motion to Limit the Testimony of Stephen Nicholas Weber ("Weber") filed by Plaintiff All Souls Unitarian Church ("All Souls") (Filing No. 38). All Souls initiated this action against Church Mutual alleging breach of contract and breach of the duty of good faith and fair dealing (Filing No. 1-1). This action is scheduled for final pretrial conference on April 15, 2026 and trial on May 11, 2026. For the following reasons, both Motions are **denied**.

### I.   BACKGROUND

In January 2024, an accidental discharge of water occurred as the direct result of the breaking apart or cracking of part of the plumbing system at All Souls' church property. *Id*. at 2. Shortly thereafter, All Souls discovered water leaking through an opening in the roof of the church directly into the church's Holtkamp Opus organ (the "Property") which caused the Property to sustain damage. *Id*.

During all relevant times in this case, there was an insurance policy (the "Policy") in force issued by Church Mutual to All Souls which insured in part, All Souls' commercial property. *Id*.

After the damage occurred, All Souls filed a claim requesting Church Mutual to pay the costs of repairing and/or replacing the damaged Property. *Id*. at 3. Church Mutual denied the claim. *Id*. All Souls filed this action in state court on August 6, 2024 and it was removed to federal court on September 19, 2024. ([Filing No. 1](Filing No. 1)).

On September 19, 2025, All Souls provided its Expert Witness Disclosures (the "Disclosures") to Church Mutual in which All Souls stated that it does not have any retained experts for whom a written report is required pursuant to Federal Rule of Civil Procedure 26(a) ([Filing No. 32-3 at 1](Filing No. 32-3 at 1)). All Souls then identified Mark Goulding ("Goulding") and Phil Lehman ("Lehman") as representatives of Goulding & Wood, Inc., to provide expert testimony on the following:

> [S]tandards and practices related to determining the costs associated with diagnosing problems with church organs, the reasonable cost to repair or replace organs or organ-related equipment or components damaged by water, and subjects related to these. They are also expected to testify as to their personal inspection(s) of the damaged organ at [All Souls'] church, their estimates for assessing the damage, and the fact that without conducting these preliminary efforts it is not possible to determine the feasibility of or the cost of repairs.

*Id*. at 1–2. All Souls also identified Ronny Gauldin ("Gauldin") and other representatives of Blackmore & Buckner Roofing to provide expert testimony. All Souls stated that these representatives are to testify concerning:

> [G]eneral knowledge related to the case, as well as direct personal knowledge of the conditions of the roofs of [All Souls'] church both before and after powerful storms impacted the church, the cause of storm-created opening(s) in the church roofs or associated components, the steps taken to prevent leaks and mitigate leaks, the maintenance of the church's roofs prior to the storms and thereafter, the cost and methods of appropriate repairs, and other matters related to these.

*Id*. at 2.

For its part, Church Mutual has disclosed Stephen Weber ("Weber") as a Rule 702 witness who will offer expert opinions regarding the cause of roof openings and the cause of water

2

intrusion at the insured property. All Souls alleges that during his deposition, Weber testified that he never inspected the property, never spoke with the roofer whose opinions he purportedly relayed, and instead relied on photographs supplied by others. ([Filing No. 38-2](Filing No. 38-2)).

## II.   LEGAL STANDARDS

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions *in limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The Court excludes evidence on a motion *in limine* only if the evidence clearly is not admissible for any purposes. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400–01. "The purpose of a motion in *limine* is not to weigh competing arguments about the strength of the parties' evidence and theories, nor is it to decide which party's assumptions are correct.  A motion in *limine* weeds out evidence that is not admissible for any purpose." *Washington Frontier League Baseball, LLC v. Zimmerman*, No. 14-cv-1862, 2018 WL 3120623, at *2 (S.D. Ind. June 26, 2018). Moreover, denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the court is unable to determine whether the evidence should be excluded. *Id*. at 1401.

Federal Rule of Evidence 702 governs testimony of expert witnesses. An expert may testify regarding the ultimate issue in a case. Fed. R. Evid. 704(a). Furthermore, an expert can base her opinion on inadmissible evidence. Fed. R. Evid. 703. However, "expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003).

Under the gatekeeping requirement set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), "the district court has a duty to ensure that expert testimony offered under Federal Rule of Evidence 702 is both relevant and reliable." *Jenkins v. Bartlett*, 487 F.3d 482, 488–89 (7th Cir. 2007) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)). "Whether proposed expert testimony is sufficiently reliable under Rule 702 is dependent upon the facts and circumstances of the particular case." *Id*. at 489. The Court is given "latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (citing *Jenkins*, 487 F.3d at 489).

In determining reliability, the Court will "consider the proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion." *Id*. Additionally, the Court must determine whether the proposed expert testimony will assist the trier of fact in determining a fact in issue or understanding the evidence. *Chapman v. Maytag Corp.,* 297 F.3d 682, 687 (7th Cir. 2002). "Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Gayton*, 593 F.3d at 616.

> Vigorous cross examination, presentation of contrary evidence and careful jury instructions . . . are the traditional and appropriate means of attacking shaky but admissible evidence. The rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.

*Richman v. Sheahan*, 415 F. Supp. 2d 929, 934 (N.D. Ill. 2006) (citations and quotation marks omitted).

### III.  DISCUSSION

In preparation for the upcoming trial, two motions are pending. Church Mutual seeks to exclude all of All Souls' expert witnesses from providing testimony in this action. (Filing No. 31). Alternatively, to the extent the Court is inclined to afford All Souls an opportunity to supplement its disclosures, Church Mutual requests that such extension be no more than thirty (30) days, and that it be afforded an equal number of days to supplement its expert disclosures if necessary. *Id*. All Souls asks the Court to limit the trial testimony of Church Mutual's proposed expert, Stephen Nicholas Weber, under Federal Rules of Evidence 702, 701, 403, and Federal Rule of Civil Procedure 26(a)(2). (Filing No. 38). The Court will address each motion in turn.

**A.    Church Mutual's Motion to Exclude All Souls' Expert Witnesses**

Church Mutual argues that All Souls' expert witnesses should be excluded for two reasons: (1) All Souls' Disclosures failed to comply with Federal Rule of Civil Procedure 26(a)(2)(C); and (2) this failure prejudiced Church Mutual.

**1.    Compliance with Federal Rule of civil Procedure 26(a)(2)(C)**

A party that intends to call an expert witness at trial must disclose that intention to other parties in advance of trial. Fed. R. Civ. P. 26(a)(2). Further, the party intending to call an expert witness must "disclose to the other part[y] the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). If the expert is retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony, then a written report must be provided. Fed. R. Civ. P. 26(a)(2)(B). However, some expert witnesses are not required to provide a written report. *See* Fed. R. Civ. P. 26(a)(2)(C). If the expert witness is not required to provide a written report, then the expert witness disclosure must state: (i) the subject matter on

which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify. *Id*. It is the latter requirement, under Fed. R. Civ. P. 26(a)(2)(C)(ii), with which Church Mutual argues that All Souls has failed to comply.

Specifically, Church Mutual argues that All Souls' Disclosures are inadequate because they are devoid of summaries of the expert witnesses' expected testimony regarding facts or opinions of the case (Filing No. 32 at 6). Church Mutual adds that the Disclosures contain no facts regarding the condition of the organ, the roof, or other items identified in the disclosures, or the experts' opinion thereof. Church Mutual asserts that the only opinion listed in the Disclosures was that Goulding and Lehman would testify that without conducting certain preliminary efforts it is not possible to determine the feasibility of or the cost of repair.

All Souls argues that it has fully disclosed its witnesses and their expected opinions in their responses to Church Mutual's interrogatories, as follows:

> Goulding and Wood came out on January 25th. They found standing water on the pedal division walk board, pedal 16' Fagott reed chest and in the pipes as well as water on the Pedal 16' Principal Chest. There were large puddles of water on the floor of the organ chamber. They returned on Friday, January 26. They covered the pedal portions of the instrument with plastic sheeting to eliminate any further damage and to direct the water from the leak to the flow of the organ chamber.
>
> Phil Lehman and Mark Goulding from Goulding and Wood's initial assessment was that the Pedal reed chest is a total loss, the pipes on that chest can be saved, but will have to be professionally cleaned and reconditioned. The chest for the Pedal 16' Principal has sustained some damage and will need moderate repairs. They suspected that there was a possibility that some minor damage may have occurred on the pedal main chest. This chest contains the 8' Octave, 8' Flauto Dolce, and 4' Choralbass. This chest would require further investigation after the leak was stopped and repaired. Assuming that there had been damage to the plaster ceiling above the pipe organ, they recommended that before any work on the ceiling takes place, they remove all exposed pipework in this area and cover and protect the chests so that remediation/repair work can take place above this area.

(Filing No. 33 at 4). All Souls asserts that their interrogatory responses describe in detail: the dates of annual tuning of the Property; Goulding and Wood's on-site inspection on January 25 and 26, 2024, directly after the discovery of the damage to the Property; Goulding and Wood's observations of water on the pedal division, reed chest, principal chest, and puddling; Goulding and Wood's assessment that the reed chest was a total loss; and Goulding and Wood's recommendations for removal, storage, and protection. *Id*. at 4–5. All Souls continues that Gauldin's expected testimony has been entirely disclosed and even though Church Mutual has known of Gauldin and his expected testimony since before this suit was initiated, they have chosen not to depose him. Because of all this, Church Mutual's claims of prejudice are meritless. All Souls contends that their disclosures are entirely consistent with Federal Rule of Civil Procedure 26(a)(2)(C). *Id*. at 5.

All Souls also argues Church Mutual failed to confer and thus, their Motion should be denied (Filing No. 33 at 6) on this basis. Church Mutual admits to failing to confer but contends that they did not understand that a Motion to Exclude raised a discovery dispute within the meaning of the rule (Filing No. 34 at 8). Church Mutual points out that denial for failure to confer is not automatic and thus, the Court should not deny their Motion on procedural grounds. The Court intends to rule on this motion on the merits, but notes that even if Church Mutual wasn't aware of its obligations, in compliance with Local Rule 37-1, it should have first reached out to All Souls' counsel and requested such information.[1]

All Souls' Disclosures are deficient. The Disclosures state that Goulding and Lehman are expected to testify about the costs of repairing organs, their personal inspection of the Property, their estimates for assessing the damages, and that without certain preliminary measures, they

---

[1] Local Rule 37-1 provides that prior to involving the court in any discovery dispute, counsel must confer in a good faith attempt to resolve the dispute. S.D. Ind. L.R. 37-1(a). The failure to do so is a basis for denial of the discovery motion. S.D. Ind. L.R.37-1(b); See *Slabaugh v. LG Elecs. USA, Inc.*, No. 1:12-cv-01020, 2015 U.S. Dist. LEXIS 38331, at *12

7

cannot determine the feasibility or cost of repair (Filing No. 32-3 at 1). Such Disclosures provide only a cursory overview of the subject matter Goulding and Lehman are expected to testify to. The Disclosures fail— at minimum—to summarize the proffered experts' opinions on those topics, and therefore fail to comply with Rule 26(a)(2)(C). *See Slabaugh v. LG Elecs. USA, Inc.*, No. 1:12-cv-01020, 2015 U.S. Dist. LEXIS 38331, at *9 (S.D. Ind. 2015) ("Plaintiffs need not outline each opinion in detail, but they must *summarize* them."). A finding of deficiency does not end the inquiry though.

### 2. Prejudice

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). District courts have broad discretion in determining whether such a failure is justified, harmless, or warrants sanctions. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011). However, the following factors should generally guide a district court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Here, the deficiencies in All Souls' Disclosures are not prejudicial. First, Church Mutual argues that they will have to blindly depose All Souls' expert witnesses without the specific summary of their opinions in the Disclosures (Filing No. 32 at 1, 8). Yet, as All Souls states, all that information was provided in All Souls' responses to interrogatories. Indeed, All Souls specifically stated in relevant part,

> Phil Lehman and Mark Goulding from Goulding and Wood's initial assessment was that the Pedal reed chest is a total loss, the pipes on that chest can be saved, but will have to be professionally cleaned and reconditioned. The chest for the Pedal 16' Principal has sustained some damage and will need moderate repairs. They suspected that there was a possibility that some minor damage may have occurred on the pedal main chest. This chest contains the 8' Octave, 8' Flauto Dolce, and 4' Choralbass.

Accordingly, Church Mutual has been provided the information they expected to receive in the Disclosures.

Moreover, the deficiencies can easily be cured by Church Mutual's alternative request. All Souls must supplement their Disclosures document with summaries of the opinions of Goulding, Lehman, and Gauldin within fourteen (14) days of the date of this Order. Thereafter, Church Mutual will have fourteen (14) days to supplement its expert disclosures if necessary. This process is unlikely to disrupt trial and the Court finds no bad faith or willfulness. Accordingly, the deficiencies in All Souls' Disclosures do not warrant the sanction of exclusion. Church Mutual's Motion is therefore **denied**.

B.      **All Souls' Motion to Limit Stephen Weber's Testimony**

In its motion *in limine*, All Souls challenges Weber's conclusions concerning the damage to the roof of the church arguing that Weber's conclusions are based solely on photographs and thus, his conclusions are not based on sufficient facts or data as required by Federal Rule of Evidence 702(b) (Filing No. 38 at 5). All Souls contends that it is undisputed, that no one on behalf of the Defendant ever personally inspected the roof openings for the purpose of determining the cause of the openings that allowed water to enter the church and damage the building and its contents. *Id.* at 2. Thus, All Souls argues Weber's testimony will be unreliable because "it is based on nothing more than a review of photographs, with no consideration of other important facts or factors such as [All Souls'] history of maintaining the roof, the lack of any prior leaks, the severity

9

of the storms that impacted the property, or similar factors." *Id*. at 5. For these reasons, All Souls contends Weber's "testimony should be strictly limited to non-expert factual matters actually within his personal knowledge." *Id* at 2.

Church Mutual responds that the photographs were merely a piece of the investigation (Filing No. 41 at 6). In addition to the photographs, Weber utilized multiple software systems which allowed him to save documents and communicate with the adjuster regarding the claim file and standard of work, and Weber reviewed the Benchmark Wind History Report and the contracting estimate. *Id*. In addition, Weber's findings and opinions directly stem from information and comments from Gauldin, All Soul's own roofer and purported expert. *Id*. at 7. Church Mutual argues that "Weber is a qualified expert whose opinions and conclusions are directly attributable to his significant experience and evaluation of the pertinent materials related to the claim at issue" and "[g]iven Weber's qualifications, the reliability of the evidence reviewed, and the fact that Weber's testimony would assist the trier of fact in determining whether there was a covered cause of loss, Plaintiff's Motion should be denied." *Id*. at 9.

All Souls' motion is **denied**, in part because its arguments go towards the weight of Weber's testimony, and not its admissibility. All Souls does not challenge Weber's qualifications, rather they argue that basing his conclusions solely on the photograph in his deposition is insufficient.

All Souls mischaracterizes what Weber stated. Specifically, Weber was asked, "[s]o that means that you, the desk adjuster, would have been basing your coverage decision entirely on photographs of the property that were provided by the insured's roofer. Is that fair?" (Filing No. 38-2 at 10, pp. 41:8–12). Weber responded, "That is a piece of the investigation, correct." *Id*. at 10, pp. 41:13. Such statements by Weber do not indicate that he merely looked at some photographs. Weber's deposition testimony evidence that the photographs, while part of his investigation,

10

constituted but a piece of it. As Church Mutual points out, Weber also indicated that in furtherance of his investigations, he looks at the insurance adjuster's findings, the contracting estimates, and pictures as well (Filing No. 41-4 at 27, pp. 84:1–22).

As stated earlier, the rejection of expert testimony is the exception rather than the rule, *Sheahan*, 415 F. Supp. 2d at 934, and determinations on admissibility should not supplant the adversarial process, *Gayton*, 593 F.3d at 616. While All Souls may disagree with Weber's conclusion, it will have an opportunity to vigorously cross-examine Weber on his investigation. Accordingly, the Court finds that Weber came to his conclusions in a sufficiently reliable manner under Rule 702 by relying on the insurance adjuster's findings, the contracting estimates, and using pictures of the damage to the roof. All Souls has not shown that the evidence it seeks to exclude clearly is not admissible for any purposes. Accordingly, All Souls' Motion *in limine* is **denied**.

## IV.   CONCLUSION

For the reasons discussed above, Church Mutual's Motion to Exclude All Souls' Expert Witnesses (Filing No. 31) is **DENIED**. All Souls is **ORDERED** to supplement its Rule 26(a)(2)(C) disclosures for Goulding, Lehman, and Gauldin within **fourteen (14) days** of this Order. Thereafter, Church Mutual will have **fourteen (14) days** to supplement its expert disclosures concerning related information, if necessary.

All Souls' Motion to Limit the Testimony of Stephen Nicholas Weber (Filing No. 38) is **DENIED**. An order in *limine* is not a final, appealable order. If a party believes that specific evidence is inadmissible during the trial, counsel may raise specific objections to that evidence at the appropriate time.

SO ORDERED.

Date: 2/24/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

11

Distribution:

John B. Drummy
KIGHTLINGER & GRAY, LLP (Indianapolis)
jdrummy@k-glaw.com

Christopher Moon
Kightlinger & Gray, LLP
cmoon@k-glaw.com

Michael L. Schultz
PARR RICHEY FRANDSEN PATTERSON KRUSE, LLP(Indianapolis)
mschultz@parrlaw.com